# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iCloud, 1 Apple Park Way, Cupertino, CA 95014<br>re. the iCloud account affiliated with<br>migueldeltoro61@yahoo.com | )<br>)<br>)   Case No.  **21-MJ-0752**<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Northern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952, 960, 963 | Importation of Controlled Substance and Conspiracy to Commit Same |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Lynsy Dornan

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lynsy Dornan, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: 02/25/2021

*William V. Gallo*
*Judge's signature*

City and state: San Diego, California    Hon. William V. Gallo, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Lynsy B. Dornan, Special Agent with Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. (hereinafter "Apple") to disclose to the government records and other information, including the contents of communications, associated with Apple ID **migueldeltoro61@yahoo.com** (hereinafter the "**Subject Account**") that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at 1 Apple Park Way, Cupertino, California 95014. The information to be disclosed by Apple and searched and seized by the government pertaining to violations of Title 21, United States Code, Sections 952, 960, & 963, is described in the following paragraphs and in Attachments A and B, which are attached hereto and incorporated herein.

2. The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Subject Account**, it does not contain all the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

3. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

4. I am a Special Agent ("SA") employed by the Department of Homeland Security

("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I am a graduate of the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia and I have been employed as a SA since October 2018. I have been trained to conduct criminal investigations for multiple violations of federal and state laws including, but not limited to alien smuggling and narcotics smuggling, human trafficking, weapons trafficking, and organized criminal activity. I am currently assigned to the Border Enforcement Security Task Force ("BEST"), Human Smuggling/Human Trafficking Group specializing in a variety of criminal and financial investigations. My primary responsibilities include investigating human smuggling/trafficking and narcotics violations. These investigations include, but are not limited to, investigations involving wire fraud, money laundering, financial crimes, and bulk cash smuggling.

5. Prior to being a SA with HSI, I was a Border Patrol Agent ("BPA") with U.S. Customs and Border Protection ("CBP") from September 2006 to October 2018. As a BPA I conducted law enforcement field operations, interviews, made arrests and prepared administrative and criminal cases related to the violation of immigration and narcotics laws.

6. My experience as an HSI Special Agent has included the investigation of cases involving the use of computers and the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

7. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I am also familiar with the various laundering methods utilized by these organizations to move and distribute the proceeds gained from the sales of their narcotics. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become

1  knowledgeable of the methods and modes of narcotics operations and the language and
2  patterns of narcotics abuse and trafficking. I have become familiar with the methods of
3  operation typically used by narcotics traffickers. I know that narcotics traffickers often
4  require the use of one or more telephone facilities to negotiate times, places, schemes and
5  manners for importing, possessing, concealing, manufacturing and distributing controlled
6  substances and for arranging the disposition of proceeds from the sale of controlled
7  substances. I know that professional narcotics operations depend upon maintaining their
8  extensive contacts. The use of telephones is essential in maintaining timely long-distance
9  and local contacts with the original suppliers and those down the organizational chain to
10 the local traffickers. The telephone enables narcotics dealers to maintain contact with
11 narcotics associates, narcotics suppliers, narcotics customers, money brokers, and money
12 launderers. I also know that narcotics traffickers often use fraudulent information to
13 subscribe to communication facilities, especially cellular telephones, and frequently change
14 communications facilities to thwart law enforcement efforts to intercept their
15 communications.

16    8.    In preparing this affidavit, I have conferred with other agents and law
17 enforcement personnel who are experienced in the area of narcotics investigations, and
18 the opinions stated below are shared by them. Further, I have personal knowledge of
19 the following facts, or have had them related to me by persons mentioned in this
20 affidavit.

## FACTS SUPPORTING PROBABLE CAUSE

22    9.    On May 23, 2020, at approximately 8:35 PM, Miguel Del Toro, a United
23 States Citizen, applied for entry into the United States from Mexico through the Otay
24 Mesa Port of Entry. Del Toro was the driver, sole occupant, and registered owner of a
25 2011 Kia Soul ("the Vehicle"), bearing California License Plates 8MCW207.

26    10.   A Canine Enforcement Team was conducting pre-primary operations when
27 the Human and Narcotics Detection Dog alerted to the undercarriage area.

28    11.   A Customs and Border Protection Officer ("CBPO") received two negative

Customs declarations from Del Toro. Del Toro stated he was crossing the border to go to Los Angeles, California.

12. A CBPO operating the Z-Portal X-Ray machine detected anomalies within the gas tank and the rear of the gas tank.

13. Further inspection of the Vehicle resulted in the discovery of 23 packages concealed in the undercarriage area, with a total approximate weight of 11.28 kgs (24.81 lbs.). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

**The Subject Account**

14. On May 23, 2020, Del Toro's Cell Phone was seized, and a search warrant was submitted to review the contents of Del Toro's Cell Phone, ("Cell Phone"). During Defendant's post-arrest interview, he provided the passcode as his birthday. Agents have tried to unlock the Cell Phone with this code and variations thereof on February 24, 2021 and were unsuccessful. Defendant's Cell Phone remains locked.

15. On June 11, 2020, the Cell Phone was downloaded at the HSI Cyber Crimes Center, which revealed the following: Model: A1549, iPhone 6; Serial Number: F73PF9Y2G5MH; IMEI Number: 359233063260099; ICCID Number: 8901260343998983647; IMSI Number: 310260349898364; and Apple ID: migueldeltoro61@yahoo.com (the **Subject Account**). This was the only information that could be unlocked, as the Cell Phone was locked. Agents continue their attempts to unlock the Cell Phone in order to extract the data, including communications, videos, and photographs, from the Cell Phone.

16. On February 12, 2021, in support of an effort to have the Cell Phone returned pursuant to Fed. R. Crim. Proc. 41(g), Defendant filed a signed Declaration in which he admitted that he has photographs and videos from the Cell Phone saved to his iCloud account. More specifically, Defendant admitted that he backed up his Cell Phone to the Subject Account from May 3, 2017 to the present. Based on Defendant's admission, the Subject Account contains likely backups of data found on Defendant's Cell Phone.

Although Defendant's Declaration specifies photographs and videos, I know based on my training and experience that iClouds also contain backups of other types of Cell Phone data, including but not limited to, text messages, iMessages, Facebook messages, Instagram, and WhatsApp messages.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the illicit activities of Del Toro and his co-conspirators, such as telephone numbers; call history; contacts; electronic mail (email) addresses; notes; photographs; messages over WhatsApp, iMessage, Facebook, Instagram, and possibly TextNow and TextMe; photographs; and other digital information are likely stored on the **Subject Account** described herein. Given what agents know about Del Toro's involvement in drug trafficking, as detailed above, I respectfully request permission to examine the **Subject Account** for data responsive to Attachment B for the period of **April 23, 2020 up to and including May 23, 2020.**

18. Based on my training and experience investigating narcotics traffickers and in talking to other investigators, I believe that a search of an iCloud account, particularly one that backups data from the user's cell phone, can reveal evidence:

   a. tending to identify attempts to import or distribute methamphetamine or some other controlled substance, attempts to transport and launder narcotics proceeds;

   b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine or some other controlled substance, the transportation or laundering of drug proceeds;

   c. tending to identify co-conspirators, criminal associates, or others involved in importing methamphetamine or some other controlled substance, those involved in transporting or laundering drug proceeds;

      d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance, transporting or laundering drug proceeds;

      e.    tending to identify the user of, or persons with control over or access to, the subject account; and/or

      f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## INFORMATION REGARDING APPLE ID AND iCLOUD[1]

19.    Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

20.    Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

      a.    Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

      b.    iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct video calls.

---

[1] The information in this section is based on information published by Apple, Inc. on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at http://images.apple.com/privacy/docs/legal-process-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "iCloud: iCloud storage and backup overview," available at https://support.apple.com/kb/PH12519; and "iOS Security," available at http://images.apple.com/privacy/docs/iOS_Security_Guide.pdf.

c. iCloud is a file hosting, storage, and sharing service provided by Apple. iCloud can be utilized through numerous iCloud-connected services and can also be used to store iOS device backups and data associated with third-party apps.

d. iCloud-connected services allow users to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs enables iCloud to be used to synchronize webpages opened in the Safari web browsers on all of the user's Apple devices. iWorks Apps, a suite of productivity apps (Pages, Numbers, and Keynote), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.

g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and

television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

21. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

22. An Apple ID takes the form of the full email address submitted by the user to create the account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.

23. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

24. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes

Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

25. Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

26. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWorks and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail

messages, call history, contacts, calendar events, reminders, notes, app data and settings, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud.

27. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics and money laundering investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug traffickers will use cellular/mobile telephones because they are mobile, and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct couriers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with drivers who transport their narcotics and/or drug proceeds.

28. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records of the **Subject Account**. Likewise, this cellphone evidence, including iMessages, Facebook messages, Instagram, and WhatsApp messages

backed up to **Subject Account**, may be used to establish the "who, what, why, when, where, and how" of the investigation into the conspiracy to distribute methamphetamine, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29. For example, in this case, the stored iMessages, Instagram messages, WhatsApp messages, and Facebook messages, and contacts connected to the **Subject Account** may provide direct communications between Hernandez and his co-conspirators. It also be used to help identify known co-conspirators of whom we only have their moniker identified. Additionally, I believe that there is probable cause to believe that photographs and videos may be present on the **Subject Account** which provide additional evidence of the conspiracy, such as photos or videos of co-conspirators or locations frequented by the conspirators in furtherance of their illicit activities. Moreover, there may be voicemails, emails, or notes (such as ledgers), which are created in furtherance of the distribution activity.

30. Activity over the **Subject Account** may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. For example, agents are especially interested in Del Toro's use of Facebook messenger, Instagram, and WhatsApp as this particular drug trafficking organization is known to use these applications to facilitate their criminal activity. In addition, emails, instant messages,

Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

32. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the drug trafficking conspiracy involving Del Toro, including information that can be used to identify the account's user.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

33. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B, incorporated herein. Upon receipt of the information described in Section I of Attachment B, HSI Agents, will review that information to locate the items described in Section II of Attachment B, incorporated herein.

//
//
//
//
//
//
//
//
//
//
//
//

## JURISDICTION

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

35. Based on the forgoing, I request that the Court issue the proposed search warrant for **Subject Account,** as described in Attachment A, incorporated herein, for evidence related to a conspiracy to distribute methamphetamine, as outlined in Attachment B, incorporated herein.

Lynsy B. Dornan
Special Agent
Homeland Security Investigations

Sworn and attested to by the applicant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1, this 25th day of February 2021.

_William V. Gallo_
The Honorable William V. Gallo
United States Magistrate Judge

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with **migueldeltoro61@yahoo.com** (the "**Subject Account**") that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at Apple Inc., 1 Apple Park Way, Cuptertino, CA 95014.

## ATTACHMENT B

## Particular Items to be Seized

### I. Information to be disclosed by Apple

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, including any messages, media, records, files, logs, or information that have been deleted but are still available to Apple, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A:

a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial

Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

    c.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

    d.    The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages, as well as messages from third party applications including Facebook, Instagram, and WhatsApp) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

    e.    The contents of all files and other records, including audio/video media, stored on iCloud, including all iOS device backups, all Apple and third-party app

data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

    f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), messaging logs (including iMessage, SMS, and MMS messages), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find my iPhone logs, logs associated with iOS device activation and upgrades, and logs associated with web-based access of Apple services (including all associated identifiers);

    g.    All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services;

    h.    All records pertaining to the types of service used; and

    i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken.

## II.   Information Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, involving

Miguel Del Toro from April 23, 2020 up to and including May 23, 2020, including, for each account or identifier listed on Attachment A, information pertaining to the following matters which constitutes evidence:

    a. tending to identify attempts to import methamphetamine or some other controlled substance;

    b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine or some other controlled substance;

    c. tending to identify co-conspirators, criminal associates, or others involved in importing methamphetamine or some other controlled substance;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance;

    e. tending to identify the user of, or persons with control over or access to, the subject account; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.